## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBERT WHALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-04317-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| AMAZON.COM, INC.; AMAZON.COM | ) | |
| SERVICES, LLC; AMAZON LOGISTICS, | ) | |
| INC.; CARCAST EXPRESS, LLC; and | ) | |
| ADAM YAHIA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

    The following matter is before the court on defendants Amazon.com, Inc. ("Amazon"), Amazon.Com Services, LLC ("Amazon Services") and Amazon Logistics, Inc.'s ("Amazon Logistics") (collectively, the "Amazon Defendants")[1] motion to dismiss. ECF No. 19. It is alternatively before the court on the Amazon Defendants' motion to strike.[2] Id. For the reasons set forth below, the court denies in part and grants in part the motion to dismiss and denies the motion to strike.

## I. BACKGROUND

    This action arises out of a tractor-trailer collision between plaintiff Robert Whaley ("Whaley") and defendant Adam Yahia ("Yahia"). ECF No. 1, Compl. ¶¶ 1, 63. On

---

[1] While Amazon is the only defendant identified as moving to dismiss on the docket, the brief indicates that all the Amazon Defendants move to dismiss the complaint. See ECF No. 19 at 1. Thus, the court assumes all the Amazon Defendants join in this motion.

[2] At the hearing, the court asked counsel for the Amazon Defendants whether they were abandoning their alternative motion for a more definite statement. ECF No. 29. Counsel confirmed that the Amazon Defendants abandon that motion such that the court need not consider its arguments. Id.

January 5, 2022, at approximately 6:44 a.m., Yahia, a Class A licensed commercial motor vehicle operator, was driving a 2017 Freightliner tractor and towing a trailer under the motor carrier operating authority of defendant Carcast Express, LLC ("Carcast Express"). Id. ¶¶ 1, 63–92.  As Whaley turned left at a green traffic light onto U.S. Highway 17, Yahia sped through the red traffic light and collided with Whaley's vehicle.  Id. ¶¶ 80–87.

　　　At the time of the subject collision, the Amazon Defendants had entered into an agreement with Carcast Express (the "Agreement") to participate in the Amazon Relay Program.  Id. ¶¶ 21–26, 36–54, 59–79.  The Amazon Defendants established Amazon Relay Program, a shipping logistics network, as part of their strategy to vertically integrate and take control of shipping and logistics.  Id. ¶¶ 21–26.  This transportation network is specifically managed by Amazon Logistics.  Id.  The program is used to transport goods from manufacturers and retailers to Amazon warehouses, distribution centers, and ultimately to customers throughout the country, including in South Carolina. Id.  To facilitate this program, the Amazon Defendants routinely enter contracts with shippers, transportation companies, interstate motor carriers, and local delivery partners. Id.  The Amazon Defendants purportedly "do not conduct any safety investigation into motor carriers or truck drivers beyond verifying current operating authority, proof of insurance, and that the motor carrier does not have a safety rating of 'Unsatisfactory.'" Id. ¶ 37.

　　　The Agreement between the Amazon Defendants and Carcast Express required Carcast Express and its employees and drivers, including Yahia, to comply with the Agreement, which included, inter alia, Amazon's Code of Business Conduct and Ethics

and Amazon's Supplier Code of Conduct.  Id.  The Agreement also specified that Amazon would retain control of many aspects of transportation related services, such as receiving, loading, storing, transporting, delivering, and unloading Amazon products, as well as complying with Amazon and any third party's safety and security policies related to premises and cargo.  Id.  Notwithstanding these requirements, Carcast Express hired Yahia as a driver despite him allegedly having a history of unsafely operating motor vehicles.  Id. ¶¶ 93–97.

On August 28, 2023, Whaley filed the complaint against the defendants alleging fourteen causes of action principally grounded in South Carolina common law negligence.[3]  ECF No. 1, Compl. ¶¶ 99–239.  Whaley brings no federal causes of action and therefore this case is before the federal court based on diversity jurisdiction.[4]  See id.

---

[3] Rather than providing the labels included on each cause of action in the complaint, the court summarizes the causes of action to show what each, in effect, alleges.  The first four causes of action allege negligent actions by Yahia and/or Carcast Express that are also attributed to the Amazon Defendants. Compl. ¶¶ 99–128.  The fifth through tenth causes of action are interrelated.  See id. ¶¶ 129–99.  Namely, the fifth, seventh, and ninth causes of action allege that the Amazon Defendants each had nondelegable duties to act as a reasonable transportation shipper and that they failed to properly vet Carcast Express as a subcontractor.  See id.  The sixth, eighth, and tenth causes of action allege that, on the day of the collision, Yahia and Carcast Express were acting as agents of the Amazon Defendants such that the Amazon Defendants are vicariously liable for Yahia and Carcast Express's actions.  See id.  The eleventh through fourteenth causes of action seek joint and several liability for damages by alternatively alleging that the Amazon Defendants collectively had a joint venture or joint enterprise and/or that the Amazon Defendants and Carcast Express had a joint venture or joint enterprise.  Id. ¶¶ 200–39.

[4] Federal district courts have original jurisdiction over cases where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states.  28 U.S.C. § 1332.  First, there is complete diversity among the parties. Compl. ¶¶ 2–17.  Whaley is a citizen and resident of South Carolina.  Id. ¶ 2.  Amazon and its subsidiaries Amazon Services and Amazon Logistics are foreign corporations incorporated under Delaware law with their principal places of business in Washington.  Id. ¶¶ 3–10.  Carcast Express is a foreign limited liability company formed under Florida law with its principal place of business in Florida.  Id. ¶ 13.  At all times relevant, Yahia

¶¶ 2–17; 28 U.S.C. § 1332.  On November 20, 2023, Amazon filed a motion to dismiss

for failure to state a claim or, in the alternative, motion to strike.  ECF No. 19.  On

December 1, 2023, Whaley responded in opposition, ECF No. 20, to which Amazon has

not replied and the time to do so has since expired.  On January 29, 2024, the court held a

hearing on the pending motions.  ECF No. 29.  As such, the motions are now ripe for

review.

## II.  DISCUSSION

The Amazon Defendants request that the court dismiss the complaint in its

entirety, or alternatively, that the court strike the unrelated allegations in the complaint

and issue an order directing Whaley to comport with the requirements of the Federal

Rules of Civil Procedure.  ECF No. 19 at 5.  First, the Amazon Defendants contend that

Whaley failed to provide a short and plain statement of the claims as required by Fed. R.

Civ. P. 8(d)(1).  Id. at 6–10.  Whaley purportedly fails to meet that requirement such that

the complaint operates as an impermissible shotgun pleading.  Id.  In pertinent part, the

Amazon Defendants claim that, while plaintiffs are entitled to plead alternatively,

hypothetically, and inconsistently, Whaley's complaint is excessively inconsistent and

---

was a citizen and resident of Florida.  Id. ¶ 17.  As such, there is complete diversity
among the parties since none of the defendants are citizens of, incorporated in, or have
their principal place of business in South Carolina.  See id. ¶¶ 2–17.  Second, the
complaint does not specify an amount in controversy or that the unspecified amount
exceeds $75,000.  See id. ¶ 98 (specifying that Whaley has suffered permanent injuries as
a result of the collision without indicating an amount sought); id. ¶¶ 79, 102–04, 110–11,
120–21, 127–28, 145, 168, 175, 193, 199, 210, 222, 231, 139 (specifying that the
defendants' actions directly and proximately caused the damages and explaining that
Whaley seeks joint and several actual and punitive damages to be determined by a jury).
However, the court asked Whaley at the hearing if his damages exceeded $75,000, and he
stipulated that, at a minimum, he has actual damages exceeding $500,000 for medical
expenses.  See ECF No. 29.  As such, the court finds that the amount in controversy
exceeds $75,000 such that the case is properly before the court.

full of "conclusory, vague, and immaterial facts." Id. As such, the Amazon Defendants claim it fails to give them adequate notice of the claims against them and the grounds upon which each claim rests. Id. Additionally, they allege that the complaint is unnecessarily convoluted such that Whaley has not met the plausibility standard required for pleadings. Id. at 10. Second, the Amazon Defendants argue that Whaley has not pleaded facts to support causes of action for his claims of vicarious liability, joint venture and partnership, or negligent conduct, such that those claims must be dismissed for failure to state a claim. Id. at 10–14.

In response, Whaley first emphasizes that the purportedly unrelated facts regarding the Amazon Relay Program establish that the Amazon Defendants "exercised significant control over the details of the subject transport." ECF No. 20 at 2 (citing Compl. ¶¶ 21–26, 36–56, 60–62). Second, Whaley argues that he has sufficiently pleaded claims for vicarious liability, joint venture and partnership, and negligence such that the motion to dismiss should be denied. Id. at 6–17. Third, Whaley contends that the motion to strike should be denied because this case arises from a collision involving the transport of Amazon goods by a driver and trucking company who partnered with the Amazon Defendants as part of the Amazon Relay Program, which the Amazon Defendants significantly controlled; consequently, he says paragraphs 20–79 of his complaint are relevant to establish the foregoing and should not be stricken. Id. at 18–19. Moreover, to the extent that the Amazon Defendants request the court strike paragraphs 16–18, Whaley contends that those paragraphs establish the citizenship and basis for personal jurisdiction for the named defendants Yahia and Carcast Express, which are therefore key to a complaint naming multiple defendants such that the motion to strike

those paragraphs should be denied.  Id. at 19–20.  Fourth and finally, Whaley argues that his claims should not be dismissed based on the length or complexity of the complaint and suggests that if ambiguity is an issue, the Amazon Defendants should have moved for a more definite statement under Fed. R. Civ. P. 12(e).[5]  Id. at 20.  Whaley notes that even if the Amazon Defendants had filed such a motion, they would not have met the requirements for the court to grant a Rule 12(e) motion.  Id. at 20–21.

The court first considers the motion to dismiss for failure to state a claim and thereafter considers the alternative motion to strike.

### A.  Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief."  Id. at 679.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the

---

[5] In the time since the motions were filed and briefed, Yahia and Carcast Express have noticed an appearance in court indicating that their respective "answers" were mailed to the court in November.  ECF Nos. 27; 28.  As such, all arguments as to default judgment are no longer applicable to these motions.  Consequently, the court does not address any arguments raised in the briefs premised on Yahia and Carcast Express's purported default.

elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

The court first determines whether the complaint complies with Federal Rule of Civil Procedure 8 before considering whether Whaley has stated facts which plausibly give rise to his fourteen causes of action.

### 1. Shotgun Pleading

Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(d), "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A "shotgun pleading" is one that "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" or one in which "it is virtually impossible to know which allegations of fact are intended to support which claims for relief." <u>SunTrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.</u>, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012), <u>report and recommendation adopted</u>, 2013 WL 505828 (E.D. Va. Feb. 8, 2013). "Not only do pleadings of this sort fail to apprise the opposing party of the particular claims against it (and the potential extent of its liability), they also water down the rights of parties to have valid claims litigated efficiently and waste scarce judicial resources." <u>Jackson v. Warning</u>, 2016 WL 7228866, at *4 (D. Md. Dec. 13, 2016) (quotation marks, citations, and alterations omitted); <u>see also</u> <u>Salami v. JPMorgan Chase Bank, N.A.</u>, 2019 WL 2526467, at *3 n.6 (M.D.N.C. June 19, 2019) ("Courts disfavor [shotgun pleadings] because their sloppiness selfishly wastes judicial resources,

7

making it harder for other plaintiffs with clearly stated claims to present their grievances to a court.").

The Amazon Defendants argue that the complaint "contains over 240 paragraphs, spans over 40 pages, and contains anything but 'a short plain statement of the claim.'" ECF No. 19 at 1–2 (quoting Fed. R. Civ. P. 8(a)). They contend that this complaint "is tantamount to throwing everything but the kitchen sink at the wall and seeing what sticks to Amazon." Id. at 8. They request that this court, if it finds the complaint to constitute a shotgun pleading, to strike the pleading and instruct counsel to replead the case. Id. at 6 (first citing Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008); and then citing Jackson, 2016 WL 7228866, at *4–5). In support of their request, the Amazon Defendants contend that the complaint contains conclusory, vague, and immaterial facts. Id. at 8. Given that this case is premised on an automobile collision, the Amazon Defendants are perplexed that Whaley included ten pages summarizing Amazon's logistics network before providing less than two pages setting out the facts of the subject collision. Id. at 8 (citing Compl. ¶¶ 80–92). To the extent that Whaley implies that Yahia and Carcast Express were under Amazon's control at the time of the collision such that they were its agents or employees, rather than independent contractors, the Amazon Defendants emphasize such a conclusion is contrary to the pleaded facts which are fully incorporated into each cause of action. Id. at 9–10. For example, they emphasize that the complaint specifies that Carcast Express exclusively exercised control over its employee, Yahia; yet the complaint also claims that the Amazon Defendants exercised control over Yahia as well. Id. at 7 (citing Compl. ¶¶ 63, 65, 67, 69, 74–75).

Given the court's summary and analysis of the allegations and legal claims which follows, <u>infra</u>, the court finds that the complaint is not a shotgun pleading because it articulates its claims with sufficient clarity that it is possible to know which allegations of fact are intended to support which claims for relief.  <u>See</u> <u>SunTrust Mortg.</u>, 2012 WL 7062086, at *7.  To be sure, the complaint requires the Amazon Defendants to engage in a high degree of analysis and interpretation, but such a failure merits a motion for a more definite statement rather than a total dismissal.  <u>See</u> <u>Potts v. Howard Univ.</u>, 269 F.R.D. 40, 42 (D.D.C. 2010) (noting that when a defendant is unclear about the meaning of a particular allegation in the complaint, the proper course of action is not to move to dismiss but to move for a more definite statement).  As such, the court next considers whether Whaley has plausibly stated facts that give rise to the causes of action detailed in the complaint.

### 2. Failure to Plead Facts to Establish Elements of Each Claim

The Amazon Defendants alternatively request that the court dismiss the complaint for failure to state facts that support the required elements of claims for vicarious liability, joint venture and partnership, and negligence as asserted against the Amazon Defendants.  ECF No. 19 at 10–14.  The court considers the causes of action in turn, bucketing interrelated causes of action together where applicable, and ultimately finds that Whaley has plausibly stated claims for relief such that the motion to dismiss is granted in part and denied in part.

### a. Vicarious Liability[6]

"The doctrine of respondeat superior provides that the employer, as the employee's master, is called to answer for the tortious acts of his servant, the employee, when those acts occur in the course and scope of the employee's employment." James v. Kelly Trucking Co., 661 S.E.2d 329, 330 (S.C. 2008). "Such liability is not predicated on the negligence of the employer, but upon the acts of the employee, whether those acts occurred while the employee was going about the employer's business, and the agency principles that characterize the employer-employee relationship." Id. "Agency is a fiduciary relationship which results from the manifestation of consent by one person to another to be subject to the control of the other and to act on his behalf." Peoples Fed. Savs. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club, 425 S.E.2d 764, 773 (S.C. Ct. App. 1992). Because the relationship is based on consent, a principal can limit an agent's authority. See Winship v. Bank of U.S., 30 U.S. 529, 561 (1831); see also Fender v. N.Y. Life Ins. Co., 155 S.E. 577, 584 (S.C. 1930). Under South Carolina law, "[t]he test to determine agency is whether or not the purported principal has the right to control the conduct of his alleged agent." Fernander v. Thigpen, 293 S.E.2d 424, 426 (S.C. 1982).

Having set forth the general principles of employer vicarious liability for the acts of their employees, the court next considers the extent to which those principles extend to independent contractors. "Generally speaking, a principal is subject to vicarious liability for the torts of a servant but not for the torts of an independent contractor." Patino v.

---

[6] Vicarious liability is defined as "[l]iability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties." In re Anonymous Member of the S.C. Bar, 552 S.E.2d 10, 12 n.3 (S.C. 2001) (internal quotation marks and citation omitted).

Cap. Bonding Corp., 465 F. Supp. 2d 518, 522 (D.S.C. 2006); see also Rock Hill Tel. Co. v. Globe Commc'ns, Inc., 611 S.E.2d 235, 238 (S.C. 2005); Creighton v. Coligny Plaza Ltd. P'ship, 512 S.E.2d 510, 520 (S.C. Ct. App.1998). However, an employer may not avoid liability simply by using the label "independent contractor." Patino, 465 F. Supp. 2d at 522; see also Beasley v. Kerr-McGee Chem. Corp., 257 S.E.2d 726, 727 (S.C. 1979).

"Under settled law, the determination of whether a claimant is an employee or independent contractor focuses on the issue of control, specifically whether the purported employer had the right to control the claimant in the performance of his work." Shatto v. McLeod Reg'l Med. Ctr., 753 S.E.2d 416, 419 (S.C. 2013) (internal quotation marks omitted) (quoting Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co., 676 S.E.2d 700, 702 (S.C. 2009)). In evaluating the right of control, the court examines four factors: "(1) direct evidence of the right or exercise of control; (2) furnishing of equipment; (3) method of payment; [and] (4) right to fire." Wilkinson, 676 S.E.2d at 702. "While evidence of actual control exerted by a putative employer is evidence of an employment relationship, the critical inquiry is 'whether there exists the right and authority to control and direct the particular work or undertaking.'" Shatto, 753 S.E.2d at 420 (quoting Young v. Warr, 165 S.E.2d 797, 802 (S.C. 1969)). Stated differently, "the right to control does not require the dictation of the thinking and manner of performing the work. It is enough if the employer has the right to direct the person by whom the services are to be performed, the time, place, degree, and amount of said services.'" Id. (quoting Nelson v. Yellow Cab Co., 538 S.E.2d 276, 280 (S.C. Ct. App. 2000), aff'd 564 S.E.2d 110 (S.C. 2002), overruled on other grounds by Wilkinson, 676 S.E.2d at 702 n.3). "If there are

11

any facts tending to prove an agency relationship, the question is one for the jury."
Gamble v. Stevenson, 406 S.E.2d 350, 352 (S.C. 1991).

This question of agency and subcontractor liability is particularly relevant to the first four causes of action, as well as to Whaley's express references to vicarious liability in Counts 6, 8, and 10. The court finds it helpful to reiterate those claims. First, Whaley provides a list of Yahia's eighteen allegedly negligent actions that are purportedly fairly attributable to both Carcast Express and the Amazon Defendants because Yahia was under their control. Compl. ¶¶ 99–104. Second, Whaley alleges negligent entrustment by Carcast Express and the Amazon Defendants for entrusting a commercial vehicle to Yahia despite knowing he lacked the proper training and experience. Id. ¶¶ 105–11. Third, Whaley alleges negligent hiring, training, retention and supervision by Carcast Express and the Amazon Defendants for failing to properly interview Yahia prior to hiring him. Id. ¶¶ 112–21. Fourth, Whaley alleges negligent maintenance of the tractor trailer by all defendants. Id. ¶¶ 122–28. The sixth, eighth, and tenth causes of action specify why Amazon and its subsidiaries exercised control over Yahia and Carcast Express such that they were the Amazon Defendants' agents. Id. ¶¶ 146–51, 169–75, 194–99. In other words, Whaley claims the Amazon Defendants are vicariously liable for Yahia and Carcast Express's negligent actions. Id. The court evaluates whether Whaley has plausibly stated facts which could support a finding that Yahia was an agent, rather than an independent contractor, of the Amazon Defendants. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

First, the complaint alleges that a truck driver's participation in the Amazon Relay Program—even as an employee of a participating trucking company such as Carcast

12

Express—requires that truck driver to download the Amazon Relay phone app.  See Compl. ¶¶ 43–58.  That driver thereafter uses the app to receive Amazon assignments, to communicate directly with Amazon, to view and manage load status, report delays, and to use commercial navigation.  Id.  For navigation, the app generates a map with an exact route the driver must follow and dictates the stops and delivery times on that map.  Id. Additionally, Amazon grades the drivers who use the Amazon Relay Program app based on individual performance, in addition to the carrier's overall performance.  Id. Altogether, these facts tend to show that the first factor of the agency test—direct evidence of the right or exercise of control—is met and that Whaley has plausibly stated that the Amazon Defendants had the right to exercise control over Yahia.  See Wilkinson, 676 S.E.2d at 702.

Second, the complaint alleges that Carcast Express owned the tractor, whereas the Amazon Defendants owned or leased the trailer, such that Whaley has plausibly alleged the second factor—that the Amazon Defendants furnished equipment.  Compl. ¶¶ 65–73. Third, the Amazon Relay Program app automatically generates invoices to pay the truck drivers, with the invoice tracking the pay week running from Sunday to Saturday and the "drivers/carriers typically getting money deposited in their bank accounts the following Friday."  Id. ¶ 57.  The complaint does not specify, however, that Yahia was paid directly by Amazon and therefore the third factor—method of payment—does not weigh in favor of either conclusion.  See generally id. ¶¶ 1–239.  Fourth, the complaint does not specify who had the right to fire Yahia, so the fourth factor does not weigh in favor of either conclusion.  See generally id.  Altogether, the court finds that Whaley has pleaded facts which plausibly indicate that the Amazon Defendants may have exerted sufficient control

over Yahia such that he acted as their agent, and not as an independent contractor; thus the court denies the motion to dismiss the claims of respondeat superior liability.

### b. Negligence

For each negligence claim, the court first evaluates whether Whaley identifies direct actions by any one of the Amazon Defendants which plausibly give rise to that negligence claim. After that, the court considers whether the complaint plausibly states a claim against Yahia or Carcast Express which may be fairly attributable to any of the Amazon Defendants under respondeat superior liability. At issue are the first, second, third, fourth, fifth, seventh, and ninth causes of action. See Compl. ¶¶ 99–145, 152–68, 176–93.

### i. Count 1: Negligence

Whaley alleges that Yahia is liable for eighteen specifically enumerated negligent actions that Whaley says are fairly attributable to both Carcast Express and the Amazon Defendants because Yahia was under their control. Compl. ¶¶ 99–104. The first cause of action does not allege any actions by the Amazon Defendants beyond purportedly employing Yahia; instead, it focuses on Yahia's negligence in causing the subject collision. See id. ¶¶ 100–02. Furthermore, throughout the rest of the complaint, the facts which directly relate to the subject collision do not indicate that the Amazon Defendants were directly involved. See id. ¶¶ 80–92.

A plaintiff must establish four elements to successfully bring a negligence claim under South Carolina law: "(1) a duty of care owed by the defendant; (2) a breach of that duty by a negligent act or omission; (3) a negligent act or omission resulted in damages to the plaintiff; and (4) that damages proximately resulted from the breach of duty." In re

14

Blackbaud, Inc., Customer Data Breach Litig., 567 F. Supp. 3d 667, 679 (D.S.C. 2021)

(quoting Savannah Bank, N.A. v. Stalliard, 734 S.E.2d 161, 163–64 (S.C. 2012)).

According to Whaley's complaint, the subject collision occurred because Yahia

sped through the red light at the intersection on a rainy day and hit Whaley's car, but the

complaint does not specify how the Amazon Defendants were directly involved in the

collision.  See Compl. ¶¶ 80–92.  For example, Whaley does not allege that Amazon

directed Yahia to disregard traffic laws.  See id.  At most, Whaley specifies that Yahia

was employed by Carcast Express and driving a tractor owned by Carcast Express but

towing a trailer owned or leased by Amazon, and he further specifies that despite

knowing Yahia was speeding and disregarding traffic laws, they allowed him to continue

to operate a commercial motor vehicle.  Id. ¶¶ 63–75, 86–87.

As such, Whaley has failed to sufficiently plead either breach or causation—the

second and third elements of negligence—by the Amazon Defendants, meaning he has

not identified a negligent act or omission directly attributable to these defendants.  See In

re Blackbaud, 567 F. Supp. 3d at 679.  Thus, the only way for this first cause of action to

survive the motion is based on the theory of vicarious liability should the court find that

Yahia acted negligently.  Whaley has clearly stated facts which plausibly allege that

Yahia acted negligently: namely, (1) Yahia owed a duty to other drivers to obey traffic

laws; (2) Yahia breached that duty when he disregarded the red light at an intersection,

drove through the intersection, and hit Whaley's car; (3) and (4) that breach directly and

proximately caused the injuries which arose from the subject collision.  See In re

Blackbaud, 567 F. Supp. 3d at 679.

The court finds that Whaley has plausibly stated a claim of vicarious liability against the Amazon Defendants for Yahia's acts and omissions performed within the scope of his employment, and Whaley has plausibly stated that transporting goods for the Amazon Defendants falls within Yahia's scope of employment as a commercial truck driver. In sum, Whaley has plausibly alleged that Yahia negligently drove his commercial vehicle in the scope of his employment with the Amazon Defendants such that the court denies the motion to dismiss Whaley's claim of negligence.

### ii. Count 2: Negligent Entrustment

Whaley alleges negligent entrustment by Carcast Express and the Amazon Defendants for entrusting a commercial vehicle to Yahia despite knowing he lacked the proper training and experience. Compl. ¶¶ 105–11.

The elements of negligent entrustment are: (1) knowledge of or knowledge imputable to the owner that the driver was either addicted to intoxicants or had the habit of drinking; (2) the owner knew or had imputable knowledge that the driver was likely to drive while intoxicated; and (3) under these circumstances, the entrustment of a vehicle by the owner to such a driver. Gadson ex rel. Gadson v. ECO Servs. of S.C., Inc., 648 S.E.2d 585, 588 (S.C. 2007). However, the "South Carolina Supreme Court has never determined whether the negligent entrustment factors set forth in Gadson limit the claim in South Carolina to situations only involving an intoxicated driver." Becker v. Estes Express Lines, Inc., 2008 WL 701388, at *2–3 (D.S.C. Mar. 13, 2008); see also State Farm Fire & Cas. Ins. Co. v. Sproull, 329 F. Supp. 3d 238, 247 (D.S.C. 2018) ("[T]his Court declines to find that South Carolina courts have so limited negligent entrustment claims to situations involving an owner's entrustment of a vehicle to an intoxicated

16

driver."); Cox v. Pinckney, 2015 WL 4571526, at *1 (S.C. Ct. App. July 29, 2015) (same). Rather, the earlier South Carolina Supreme Court case governing the tort specified that "[t]he theory of negligent entrustment provides: the owner or one in control of the vehicle and responsible for its use who is negligent in entrusting it to another can be held liable for such negligent entrustment." Am. Mut. Fire Ins. Co. v. Passmore, 274 S.E.2d 416, 418 (S.C. 1981) (internal quotation marks and citations omitted).

The parties do not provide any arguments for or against this claim. However, given the facts alleged in the complaint, the court finds that Whaley has plausibly stated a claim for negligent entrustment sufficient to survive a motion to dismiss. In pertinent part, Whaley alleges that Carcast Express entrusted its truck and the Amazon Defendants entrusted their trailer despite purportedly knowing that Yahia was a poor driver. See Compl. ¶¶ 94–97. The court therefore denies the motion to dismiss as to the claim of negligent entrustment.

### iii. Count 3: Negligent Hiring, Training, Retention and Supervision

Whaley brings a claim of negligent hiring, training, retention, and supervision against Carcast Express and the Amazon Defendants for failing to properly interview Yahia prior to hiring him. Compl. ¶¶ 112–21. He alleges that "Yahia was a dangerous and incompetent commercial motor vehicle operator with a poor safety record and a history of safety issues and violations" about which Carcast Express and the Amazon Defendants "knew or should have known." ECF No. 20 at 4 (citing Compl. ¶¶ 94–97).

Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort.

In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public,

17

> a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public . . . [T]he employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence. Stated differently, the employer's liability under this theory is not derivative, it is direct.

James, 661 S.E.2d at 330–31.  Additionally, the South Carolina Supreme Court expressly held that even where the employer stipulates to vicarious liability for torts committed by its employee, the plaintiff may still bring a claim for negligent hiring, training, retention, and supervision that is not duplicative of the established vicarious liability, provided the elements of the tort are met.  Id. at 331–32.

More specifically, "[n]egligent hiring cases 'generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties.'"  Kase v. Ebert, 707 S.E.2d 456, 459 (S.C. Ct. App. 2011) (quoting Doe v. ATC, Inc., 624 S.E.2d 447, 450 (S.C. Ct. App. 2005)); see also Farr v. Lott, 2019 WL 2051300, at *1 (S.C. Ct. App. May 8, 2019) (same as to negligent retention).  An employer is liable under a theory of negligent supervision when an employee:

> (1) is upon the premises of the employer or is using a chattel of the employer,
>
> (2) the employer knows or has reason to know that he has the ability to control his employee, and
>
> (3) the employer knows or should know of the necessity and opportunity for exercising such control.

Moore by Moore v. Berkeley Cnty. Sch. Dist., 486 S.E.2d 9, 12 (S.C. Ct. App. 1997) (citing Degenhart v. Knights of Columbus, 420 S.E.2d 495, 496 (S.C. 1992)).

These cases "will ordinarily be determined by the factfinder, and not as a matter of law."  Doe, 624 S.E.2d at 450 (citations omitted); see also Kase, 707 S.E.2d at 459.

18

"Nevertheless, the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." Doe, 624 S.E.2d at 450.

The parties do not provide direct arguments as to this claim. As best the court can tell, the control question identified under vicarious liability again rears its head. Additionally at issue may be whether this tort is available where the Amazon Defendants' only chattel was the trailer, whereas Carcast Express owned the tractor pulling that trailer. The complaint does not allege that the Amazon Defendants personally hired Yahia, so the court finds that Whaley has not stated facts which support the required elements of a claim of negligent hiring. However, the court finds the Whaley has plausibly alleged a claim of negligent supervision whereby Yahia towed Amazon's trailer. See Compl. ¶¶ 41, 43, 49–54. As he drove that trailer, the Amazon Defendants plausibly exerted control over Yahia, including through software that presumably would have allowed them to prevent Yahia from negligently driving that vehicle had they properly supervised him. See id. This is a tenuous claim, but it nevertheless survives the motion to dismiss.

### iv. Count 4: Negligent Maintenance

Whaley alleges all named defendants—Yahia, Carcast Express, and the Amazon Defendants—failed to properly maintain, inspect, service, and repair the tractor trailer. Compl. ¶¶ 122–28. It is unclear how this is a separate cause of action from Whaley's first claim of negligence because the court has yet to identify a specific tort of negligent maintenance separate from a general negligence cause of action and Whaley has not provided such a case. The Amazon Defendants appear similarly perplexed by this claim, suggesting it is implausible as it alleges that "Amazon was somehow required to maintain

19

Carcast's Tractor," which is not legally true and "not based in reality."  ECF No. 19 at

13.  Moreover, the Amazon Defendants appear to argue that such a claim is irrelevant to

this case because the complaint does not allege "that Amazon's trailer suffered a defect or

otherwise caused the collision through a failure of any of the Amazon Defendants."  Id. at

13–14.  Given the foregoing, the court grants the motion to dismiss without prejudice as

to Whaley's claim of negligent maintenance.

### v. Counts 5, 7, and 9: Negligent Selection of Subcontractor

In his fifth, seventh, and ninth causes of action, Whaley alleges the Amazon

Defendants negligently selected Carcast Express, and Yahia in turn, to participate in their

logistics network.  Compl. ¶¶ 129–45, 152–68, 176–93.  The court evaluates whether

Whaley has plausibly stated a claim for relief on these causes of action, ultimately

finding that he has and denying the motion to dismiss the claims.

Another court in this district recently heard an analogous case whereby a plaintiff

sought to recover for injuries sustained in a car accident with a truck driver.  Ruh v.

Metal Recycling Servs., LLC, 436 F. Supp. 3d 844, 845 (D.S.C. 2020).  In that case, the

plaintiff sued the truck driver, the trucking company, as well as two companies for which

the trucking company was carrying cargo.  Id.  The final set of defendants—the cargo

defendants—filed a motion to dismiss for failure to state a claim.  Id. at 847–48.  The

district court first found that the complaint did not allege an employment or similar

relationship between the cargo defendants and either the truck driver or the trucking

company and thereafter found that the cargo companies could not be liable for actions of

an independent contractor.  Id. at 848–52.  Thus, the court held that the plaintiff could not

recover from the cargo defendants on a theory of negligent hiring or retention based on

the facts alleged in the complaint.  Id. at 852.  Yet, the court delayed entry of judgment to allow the plaintiff to seek leave to amend her complaint.  Id.  The plaintiff then filed a motion to amend her complaint to add a claim that the cargo defendants were negligent in selecting the trucking company to transport their cargo; subsequently, the court denied the motion to amend and dismissed the complaint.  Ruh v. Metal Recycling Servs., LLC, 2020 WL 1303136, at *2–3 (D.S.C. Mar. 19, 2020).

After the district court's decision, the plaintiff appealed to the Fourth Circuit, Ruh v. Metal Recycling Servs., LLC, 2022 WL 203744, at *1–4 (4th Cir. Jan. 24, 2022), and the Fourth Circuit thereafter certified the following question to the South Carolina Supreme Court: "Under South Carolina law, can an employer be subject to liability for harm caused by the negligent selection of an independent contractor?"  Ruh v. Metal Recycling Servs., LLC, 889 S.E.2d 577, 579 (S.C. 2023).  The South Carolina Supreme Court answered, "[y]es, the principal in an independent contractor relationship may be subject to liability for physical harm proximately caused by the principal's own negligence in selecting the independent contractor."  Id.  In its decision, the South Carolina Supreme Court emphasized that the plaintiff's claim did not rest on the allegation that the trucking company was negligent, but rather that the cargo defendants were negligent in selecting the trucking company to perform the work.  Id. at 580.  In other words,

> proving the negligence of the independent contractor will not result in the liability of the principal. . . . [T]here can be no recovery against the principal unless the plaintiff separately proves the negligence of the principal in selecting that particular independent contractor and that the principal's negligence was a proximate cause of the alleged injuries.

21

Id.  The Fourth Circuit thereafter vacated and remanded for further proceedings consistent with the South Carolina Supreme Court's opinion.  See Ruh v. Metal Recycling Servs., LLC, 2023 WL 4637116, at *1 (4th Cir. July 20, 2023).

Thus, to the extent that Whaley alleges the Amazon Defendants negligently selected Carcast Express, and Yahia in turn, to participate in their logistics network—as set forth in the fifth, seventh, and ninth causes of action—those allegations are plausible in light of Ruh and thereby survive the motion to dismiss.

### c.  Joint Venture and Partnership

The eleventh through fourteenth causes of action in the complaint deal with claims of joint venture and joint enterprise.  Compl. ¶¶ 200–39.  Counts eleven and thirteen allege, presumably in the alternative, that the Amazon Defendants have either a joint venture or joint enterprise such that they are jointly and severally liable for any liability incurred by any one of the companies.  See id.  Counts twelve and fourteen expand on that theory and allege that the Amazon Defendants and Carcast Express have either a joint venture or joint enterprise such that there is joint and several liability for any liability incurred by any one of the defendants.  See id.

The South Carolina Supreme Court has repeatedly held that "to constitute a joint enterprise, so that the negligence of one may be imputed to another, there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto."  Spradley v. Houser, 146 S.E.2d 621, 623 (S.C. 1966); see also Peoples Fed. Sav. & Loan Ass'n, 425 S.E.2d at 774 ("A joint enterprise exists where there are two or more persons united in the joint prosecution of a common purpose under such circumstances that each has

22

authority, express or implied, to act for all in respect to the control of the means and the agencies employed to execute such common purpose.").

The Amazon Defendants first emphasize that this claim of joint venture liability sounding in negligence is "extraordinarily rare" under South Carolina law and that it has not been recognized "aside from the limited factual scenario of vehicular accidents involving a guest passenger." ECF No. 19 at 11. Even if the court were to apply it to this scenario, they contend that the allegations contained in the eleventh through fourteenth causes of action include no allegations as to what losses were purportedly shared, what type of agreements were in place between the parties, or even how the profits were shared. Id. at 11–12. Consequently, the Amazon Defendants ask the court to find that Whaley has not plausibly alleged a joint venture or enterprise among the Amazon Defendants or between the Amazon Defendants and Carcast Express and that Counts Eleven through Fourteen should be dismissed accordingly. Id.

In response, Whaley contends he has sufficiently pleaded claims for joint venture and/or joint enterprise among the Amazon Defendants and/or between the Amazon Defendants and Carcast Express. ECF No. 20 at 9–11. He emphasizes that in South Carolina, relations among joint venturers are governed by partnership law. Id. To prove partnership, a party must show (1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management. Id. (citing Moore v. Moore, 599 S.E.2d 467, 472 (S.C. Ct. App. 2004). Whaley argues that his complaint sufficiently alleges that the defendants shared in profits and losses.[7]

---

[7] The court is highly skeptical of these allegations and doubts that the Amazon Defendants share profits and losses with anyone except Jeff Bezos and shareholders, but this is a question for another day.

23

Id. (citing Compl. ¶¶ 206–07, 218–19).  He contends that the defendants acted together to deliver Amazon goods, which required Yahia and Carcast Express to transport the Amazon goods on the Amazon Defendants' behalf.  Id.  He further contends that in pursuit of the joint venture, the defendants "shared and combined their financial resources, online platforms (including Amazon Relay software), logistics, goods for sale and delivery, services, intellectual property equipment, hardware, applications and software, contractors, employees, officers and directors."  Id. at 10–11 (citing Compl. ¶¶ 203, 214).  Finally, Whaley contends that the defendants "jointly control and/or retained the right to control the joint venture."  Id. at 11 (citing Compl. ¶¶ 204, 216).  Whaley emphasizes that such allegations are sufficient to survive the motion to dismiss— any purported lack of specificity can only be cured after discovery.  Id.

The court finds that Whaley's allegations, taken as true, are sufficient to survive a motion to dismiss for his joint venture/enterprise claims because Whaley has sufficiently alleged control, pooled resources, and a sharing of profits and losses.  See Compl. ¶¶ 203, 206–07, 214, 218–19.  The court grants the motion and dismisses Count 4 but denies the motion as to the remaining thirteen causes of action.  The court thereafter turns to the Amazon Defendants' motion to strike, which is sought in the alternative.

### B.  Motion to Strike

Rule 12(f) provides:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal quotation marks and citation omitted); see also Brown v. Inst. For Fam. Centered Servs., Inc., 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005) ("Motions to strike are . . . granted only for egregious violations.").  When presented with a motion to strike, "the court must view the pleading under attack in a light most favorable to the pleader."  Clark v. Milam, 152 F.R.D. 66, 71 (S.D.W. Va. 1993). Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings.  Fed. R. Civ. P. 12(f).  According to Rule 7, a document is a pleading only if it corresponds to one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-party complaint, answer to a third-party complaint, and a reply to an answer.  Fed. R. Civ. P. 7(a).

"[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt."  Barnes v. D.C., 289 F.R.D. 1, 6 (D.D.C. 2012).  "Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money."  Gibson v. Confie Ins. Grp. Holdings, Inc., 2017 WL 2936219, at *12 (D.S.C. July 10, 2017).  "[S]uch motions are to be granted infrequently" and are reviewed for abuse of discretion; "decisions that are reasonable, that is, not arbitrary, will not be overturned."  Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x 239, 246–47 (4th Cir. 2007) (quoting Seay v. Tenn. Valley Auth., 339 F.3d 454, 480 (6th Cir. 2003)).

The Amazon Defendants alternatively request that the court grant the motion to strike. See ECF No. 19 at 8. At the hearing, counsel for the Amazon Defendants specified that the motion asks the court to strike paragraphs 6, 9, 11–12, 20–36, 39–47, 57–58, 60, and 62 of the complaint. ECF No. 29. Upon review of the parties' briefs and the arguments at the hearing, and upon consideration of the motion to dismiss in full, the court denies the motion to strike. Paragraphs 6 and 9 properly identify Amazon Logistics and Amazon Services, as is required in a complaint naming those entities as defendants, and paragraphs 11 and 12 establish why the court has the required general and specific personal jurisdiction over the Amazon Defendants, which is also a required element of a well-pleaded complaint. Compl. ¶¶ 6, 9, 11, 12. Paragraphs 20–79 are factual allegations detailing the Amazon Relay Program and its attendant requirements. Id. ¶¶ 20–79. These allegations are relevant to the question of whether the Amazon Defendants may be liable under respondeat superior liability as they speak to the element of control in order to determine agency. See id.; Wilkinson, 676 S.E.2d at 702. Consequently, the court denies the motion to strike.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES IN PART** and **GRANTS IN PART** the motion to dismiss. The court **DENIES** the motion to strike.

26

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 1, 2024**
**Charleston, South Carolina**

27