IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ROBERT WHALEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>AMAZON.COM, INC.; AMAZON.COM )<br>SERVICES, LLC; AMAZON LOGISTICS, )<br>INC.; CARCAST EXPRESS, LLC; and )<br>ADAM YAHIA, )<br>)<br>Defendants. )<br>_____) | No. 2:23-cv-04317-DCN<br><br>**ORDER** |

The following matter is before the court on plaintiff Robert Whaley's ("Whaley") motion to compel, ECF No. 38, and motion to amend his complaint, ECF No. 60. It is also before the court on defendants Amazon.com, Inc. ("Amazon"), Amazon.com Services, LLC ("Amazon Services") and Amazon Logistics, Inc.'s ("Amazon Logistics") (collectively, the "Amazon Defendants") motion for confidentiality order. ECF No. 45. For the reasons set forth below, the court grants the motion to amend the complaint and defers ruling on the motion to compel. The court also vacates the previous confidentiality order and grants the motion for the court's standard confidentiality order with leave for the Amazon Defendants to seek attorney's eyes only ("AEO") designations for identified documents pursuant to motions for protective orders going forward. With regards to documents previously produced under the prior confidentiality order, the court directs the Amazon Defendants to identify those documents which it deems to merit AEO designation by August 1, 2024. Furthermore, Whaley's counsel may not share any

1

designated AEO documents until the Amazon Defendants provide a list of designated documents to the parties and the court.

## I.  BACKGROUND

This action arises out of a tractor-trailer collision between Whaley and defendant Adam Yahia ("Yahia"). ECF No. 1, Compl. ¶¶ 1, 63. On January 5, 2022, at approximately 6:44 a.m., Yahia, a Class A licensed commercial motor vehicle operator, was driving a 2017 Freightliner tractor and allegedly towing a trailer for the Amazon Defendants under the motor carrier operating authority of defendant Carcast Express, LLC ("Carcast Express"). Id. ¶¶ 1, 63–92. As Whaley turned left at a green traffic light onto U.S. Highway 17, Yahia sped through the red traffic light and collided with Whaley's vehicle. Id. ¶¶ 80–87.

At the time of the subject collision, the Amazon Defendants had allegedly entered into an agreement with Carcast Express (the "Agreement") to participate in the Amazon Relay Program. Id. ¶¶ 21–26, 36–54, 59–79. The Amazon Defendants established Amazon Relay Program, a shipping logistics network, as part of their strategy to vertically integrate and take control of shipping and logistics. Id. ¶¶ 21–26. This transportation network is specifically managed by Amazon Logistics. Id. The program is used to transport goods from manufacturers and retailers to Amazon warehouses, distribution centers, and ultimately to customers throughout the country, including in South Carolina. Id. To facilitate this program, the Amazon Defendants routinely enter contracts with shippers, transportation companies, interstate motor carriers, and local delivery partners. Id. The Amazon Defendants purportedly "do not conduct any safety investigation into motor carriers or truck drivers beyond verifying current operating

authority, proof of insurance, and that the motor carrier does not have a safety rating of 'Unsatisfactory.'" Id. ¶ 37.

The Agreement between the Amazon Defendants and Carcast Express required Carcast Express and its employees and drivers, including Yahia, to comply with the Agreement, which included, inter alia, Amazon's Code of Business Conduct and Ethics and Amazon's Supplier Code of Conduct. Id. The Agreement also specified that Amazon would retain control of many aspects of transportation related services, such as receiving, loading, storing, transporting, delivering, and unloading Amazon products, as well as complying with Amazon and any third party's safety and security policies related to premises and cargo. Id. Notwithstanding these requirements, Carcast Express hired Yahia as a driver despite him allegedly having a history of unsafely operating motor vehicles. Id. ¶¶ 93–97.

On August 28, 2023, Whaley filed the complaint against the defendants alleging fourteen causes of action principally grounded in South Carolina common law negligence.[1] ECF No. 1, Compl. ¶¶ 99–239. Whaley brings no federal causes of action,

---

[1] Rather than providing the labels included on each cause of action in the complaint, the court summarizes the causes of action to show what each, in effect, alleges. The first four causes of action allege negligent actions by Yahia and/or Carcast Express that are also attributed to the Amazon Defendants. Compl. ¶¶ 99–128. The fifth through tenth causes of action are interrelated. See id. ¶¶ 129–99. Namely, the fifth, seventh, and ninth causes of action allege that the Amazon Defendants each had nondelegable duties to act as a reasonable transportation shipper and that they failed to properly vet Carcast Express as a subcontractor. See id. The sixth, eighth, and tenth causes of action allege that, on the day of the collision, Yahia and Carcast Express were acting as agents of the Amazon Defendants such that the Amazon Defendants are vicariously liable for Yahia and Carcast Express's actions. See id. The eleventh through fourteenth causes of action seek joint and several liability for damages by alternatively alleging that the Amazon Defendants collectively had a joint venture or joint enterprise and/or that the Amazon Defendants and Carcast Express had a joint venture or joint enterprise. Id. ¶¶ 200–39.

3

and therefore this case is before the federal court based on diversity jurisdiction.[2]  See id. ¶¶ 2–17; 28 U.S.C. § 1332.

On April 9, 2024, Whaley filed a motion to compel.  ECF No. 38.  On April 23, 2024, the Amazon Defendants filed a response in opposition, ECF No. 50, to which Whaley replied on April 26, 2024, ECF No. 51.  On April 12, 2024, the Amazon Defendants filed a motion for confidentiality order, ECF No. 45, to which Whaley filed a response in opposition on April 16, 2024, ECF No. 47.  On May 1, 2024, the court held a telephonic status conference in which the court orally granted the motion for confidentiality order whereby the parties would be bound by Amazon's proposed confidentiality order so that Whaley could have access to those documents prior to his depositions.  During the telephone conference, the court allowed Whaley to move to modify the confidentiality order at a later date.

---

[2] Federal district courts have original jurisdiction over cases where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states.  28 U.S.C. § 1332.  First, there is complete diversity among the parties.  Compl. ¶¶ 2–17.  Whaley is a citizen and resident of South Carolina.  Id. ¶ 2.  Amazon and its subsidiaries Amazon Services and Amazon Logistics are foreign corporations incorporated under Delaware law with their principal places of business in Washington.  Id. ¶¶ 3–10.  Carcast Express is a foreign limited liability company formed under Florida law with its principal place of business in Florida.  Id. ¶ 13.  At all times relevant, Yahia was a citizen and resident of Florida.  Id. ¶ 17.  As such, there is complete diversity among the parties since none of the defendants are citizens of, incorporated in, or have their principal place of business in South Carolina.  See id. ¶¶ 2–17.  Second, the complaint does not specify an amount in controversy or that the unspecified amount exceeds $75,000.  See id. ¶ 98 (specifying that Whaley has suffered permanent injuries as a result of the collision without indicating an amount sought); id. ¶¶ 79, 102–04, 110–11, 120–21, 127–28, 145, 168, 175, 193, 199, 210, 222, 231, 139 (specifying that the defendants' actions directly and proximately caused the damages and explaining that Whaley seeks joint and several actual and punitive damages to be determined by a jury).  However, the court asked Whaley at the hearing if his damages exceeded $75,000, and he stipulated that, at a minimum, he has actual damages exceeding $500,000 for medical expenses.  See ECF No. 29.  As such, the court finds that the amount in controversy exceeds $75,000 such that the case is properly before the court.

On June 12, 2024, the Amazon Defendants provided Whaley with its third supplemental responses and production. In response, Whaley filed a supplement to the motion to compel on June 14, 2024, ECF No. 58, to which the Amazon Defendants filed a supplemental response in opposition on June 21, 2024, ECF No. 59. Additionally, on June 24, 2024, Whaley filed a motion to amend the complaint. ECF No. 60. On July 8, 2024, the court held a hearing on these pending motions during which the court orally granted the motion to amend the complaint. ECF No. 63. As such, the motions are now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case." United States ex rel. Adams v. Remain at Home Senior Care, LLC, 2022 WL 130942, at *1 (D.S.C. Jan. 14, 2022). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through clarifying, explaining and supporting its objections with competent evidence." Id. (internal quotation marks and citations omitted).

A discovery request is relevant if there is any possibility that the information sought might be relevant to the subject matter of the action. Id. "While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been 'broadly construed to encompass any possibility that the information sought may be relevant to the

5

claim or defense of any party.'" Martin v. Bimbo Foods Bakeries Distrib., LLC, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (quoting EEOC v. Sheffield Fin., LLC, 2007 WL 1726560 (M.D.N.C. June 13, 2007)) (internal citations omitted). "Relevance is not, on its own, a high bar." Va. Dep't of Corr. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019). Rule 26's proportionality requirement "mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." Gilmore v. Jones, 2021 WL 68684, at *3–4 (W.D. Va. Jan. 8, 2021). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment.'" (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947))). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). That said, discovery is not limitless, and the court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed. R. Civ. P. 26(c).

### III.  DISCUSSION

Upon the grant of the motion to amend, there are now two pending motions before the court: Whaley's motion to compel, ECF No. 38, and the Amazon Defendants' motion for confidentiality order, ECF No. 45. At the hearing, the parties indicated that they would confer as to the disputes underlying the motion to compel. ECF No. 63. As

such, the court defers ruling on that motion until the parties indicate it is ripe for review. In this order, the court confines itself to consideration of the Amazon Defendants' motion for confidentiality order. ECF No. 45.

The Amazon Defendants filed a proposed confidentiality order which modified the standard order on the District of South Carolina's website, with those modifications indicated in an attached redlined document. ECF Nos. 45 at 1; 45-1 (Redlined Confidentiality Order). The Amazon Defendants note that both parties agree that entry of a confidentiality order is necessary in this case. ECF No. 45 at 1. They argue that a modified order should be entered due to the nature of "extremely sensitive confidential information, the disclosure of which to another party or non-party would create a substantial risk of serious harm to the business or competitive position of the designating party that could not be avoided by less restrictive means." Id. As an example of a modification, the Amazon Defendants wish to allow each party to unilaterally designate documents with extremely sensitive information as AEO. Id. at 1–2.

In response, Whaley argues that the Amazon Defendants "ha[ve] failed to particularize the need for its modified Confidentiality Order and, as such, [Whaley] respectfully requests the Court enter the form Confidentiality Order." ECF No. 47 at 1. He emphasizes that, in the time since the 26(f) conference, he "has tried to reach a reasonable agreement with Amazon regarding the Confidentiality Order." Id. at 2. That agreement has purportedly failed because "Amazon has continuously demanded inclusion of ambiguous, contradictory, overly restrictive, and self-serving terms that go well

beyond the protections afforded to corporate defendants."[3]  Id.  Whaley asserts that the Amazon Defendants, in essence, seek the ability to litigate the instant action almost entirely under seal.  Id. at 3.

At the May 1, 2024 telephonic conference call, the court orally granted the motion for confidentiality order whereby the parties became subject to Amazon's proposed confidentiality order so that Whaley could have access to those documents prior to his depositions.  The court granted that motion with leave for Whaley to move for a modified confidentiality order at a later date.  At the hearing, the court confirmed that Whaley now requests the court enter the court's standard confidentiality order in place of the AEO order currently in force for the same arguments presented in the original response in opposition.  ECF No. 63.

In his supplemental brief, Whaley emphasizes that he "remains hampered by Amazon's designation of nearly every single document produced in this case as either confidential or attorneys' eyes only."  ECF No. 58 at 13.  "The only non-confidential documents produced to date are the title documents related to Amazon's trailer."  Id.  Importantly, every document produced related to the Amazon Relay Program has been designated as AEO by Amazon.  Id.  Given that framework, Whaley requests the court

---

[3] Whaley provides two examples of those unreasonable requests.  ECF No. 47 at 3.  First, the Amazon Defendants seek to broaden the scope of the Confidentiality Order "to include not only documents, but also any information copied or extracted from the documents; copies, excerpts, summaries, or compilations of the information from the documents; and testimony, conversations, or presentations that might reveal information from the documents."  Id.  Second, the Amazon Defendants wish to create an additional designation for documents as "attorneys' eyes only," which would designate documents that could not "be shown to, reviewed by, or discussed even with parties subject to the Confidentiality Order, unless, apparently, in a deposition setting."  Id.

enter the standard confidentiality order in place of the more restrictive order that the Amazon Defendants had proposed.  Id.

The scope of discovery under the federal rule is broad.  See Fed. R. Civ. P. 26(b)(1).  The court may, however, "for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . requiring that a trade secret or other confidential information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 16(c)(1)(G).  Such orders may prescribe, among other measures, "forbidding the disclosure or discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Id. (c)(1)(A), (c)(1)(D).  Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." Rech v. Wal-Mart Stores E., L.P., 2020 WL 3396723, at *2 (D.S.C. June 19, 2020).  To determine whether good cause exists to support a confidentiality or protective order, courts have a great degree of discretion.  Duncan v. Costco Wholesale Corp., 2021 WL 5827272, at *2 (D.S.C. Apr. 12, 2021).  Typically, courts balance the interests involved: the harm to the party seeking the protection versus the importance of public disclosure.  Id.  A motion for a protective order is subject to a conferral certification requirement comparable to that for motions to compel and the same provision on the award of expenses applicable to motions to compel.  See Fed. R. Civ. P. 26(c)(1), (3).  "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290

(4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

Confidentiality orders allow the parties to review and designate documents as "confidential" before producing them. Peeples v. Herrnstein Auto Grp., LLC, 2022 WL 1198075, at *3 (D.S.C. Apr. 22, 2022). The burden is placed on the attorney to, in good faith, review the documents and determine that they contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information. Id. "As the court has explained, '[c]onfidential commercial information has been defined as important proprietary information that provides the business entity with financial or competitive advantage when it is kept secret and results in competitive harm when it is released to the public.'" Lyman v. Greyhound Lines, Inc., 2021 WL 3811298, at *5 (D.S.C. Aug. 26, 2021) (alteration in original) (quoting Rech, 2020 WL 3396723, at *2). To establish good cause for a protective order in the context of confidential business documents, the moving party must show that the disclosure of its commercial information will give rise to an "identifiable harm." Id. (quoting Minter v. Wells Fargo Bank, N.A., 2010 WL 5418910, at *8 (D. Md. Dec. 23, 2010)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Id. (internal citations omitted).

If a confidentiality order is entered, the reviewing attorney must certify, pursuant to Fed. R. Civ. P. 11, that his or her designations are proper. Peeples, 2022 WL 1198075, at *3; see also Minter, 2010 WL 5418910, at *2 (noting that the Fourth Circuit has not "explicitly defined the parameters of the initial 'good faith' review required pursuant to a

stipulated confidentiality order," but noting that "[a]nything less than a document-by-document or very narrowly drawn category-by-category assessment fails to satisfy the initial good-faith review requirement").  When parties cannot agree on whether a confidentiality order is necessary, the court invokes its "broad discretion in resolution of discovery problems that arise in cases pending before [it]."  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003).

Both parties agree that a confidentiality order is warranted, but they disagree on whether an AEO provision is appropriate.  See ECF Nos. 45; 47.  The decision whether to include an AEO provision in the confidentiality order falls within the court's broad discretion to resolve discovery problems that arise in cases pending before it.  Marlboro Elec. Coop., Inc. v. Cent. Elec. Power Coop., Inc., 2021 WL 5998612, at *2 (D.S.C. May 13, 2021) (citing Carefirst of Md., Inc., 334 F.3d at 402).  At the hearing, the parties indicated that around two-thirds of the documents produced to date were designated as AEO materials.  ECF No. 63.

In their motion for a confidentiality order, the Amazon Defendants provide no context as to why such protection is necessary, much less why the heightened standard of an AEO designation is merited.  See ECF No. 45.  In their response in opposition to Whaley's motion to compel, the Amazon Defendants contend that

> much of the information [Whaley] has sought in discovery contains extremely sensitive confidential information and the disclosure of which to another party or non-party would create a substantial risk of serious harm to the business or competitive position of the designating party that could not be avoided by less restrictive means.

ECF No. 50 at 2.  Though the Amazon Defendants appear to seek an almost universal AEO confidentiality order designation, they specify that the confidential documents at issue in Whaley's discovery requests are those documents related to "Relay Terms of

Service and Program Policies with Primex Logistics, LLC." Id. at 2–3. The Amazon Defendants further aver that those documents "and other responsive documents" contain sensitive, private, business information. Id. at 3.

The court finds that litigation arising out of a car wreck likely does not implicate the Amazon Defendants' confidentiality interests—particularly where the plaintiff is an individual harmed in that accident and not a business competitor. See Lyman, 2021 3811298, at *6; Insulate Am. v. Masco Corp., 227 F.R.D. 427, 433 (W.D.N.C. 2005) ("Courts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor."). Additionally, the proposed AEO order unnecessarily shifts the burden from the party seeking protection—who would typically do so by moving for a protective order—to the party seeking discovery. See Seattle Times Co v. Rhinehart, 467 U.S. 20, 36 (1984) (observing that courts are afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required").

Thus, the court vacates its previous confidentiality order and enters the standard confidentiality order for the District of South Carolina. All protected documents produced to date shall be designated as confidential and the court directs the Amazon Defendants to provide the parties and the court a list of those previously produced documents which it believes merit an AEO designation by August 1, 2024. Until receipt of that list, all currently designated AEO documents remain designated as AEO and may not be shared. Going forward, the standard confidentiality order ensures that confidential documents are entitled to confidentiality. If the Amazon Defendants believe an identified document merits the heightened AEO protection, they may move for a protective order pursuant to the good cause standard required for such orders.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for a form confidentiality order with leave to move for a protective order for those discovery productions which merit AEO designation.  The court **GRANTS** the motion to amend and **DEFERS** ruling on the motion to compel.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**July 11, 2024**
**Charleston, South Carolina**